Thank you, your honor. Good morning, and may it please the court, Adam Stevenson on behalf of Chad Hansmeier. Today we have a question of the sufficiency of probable cause based upon a search warrant affidavit that was based upon a single newly arrested confidential informant, as well as if the court determines there was no probable cause, whether reliance on the warrant was in good faith. I'm happy to answer any good faith questions that the court may have, but I feel it appropriate to focus on the threshold question of whether there was sufficient probable cause to issue the warrant in the forced instance. As mentioned earlier, this case and this affidavit was based upon a newly arrested confidential informant of, I guess, basically new as a confidential informant as well. There was no prior interactions with law enforcement of providing tips to provide reliability. So then the court looks to questions of the extent of corroboration, the nature of the relationship, the amount of details provided. And the confidential informant did provide an amount of details, did provide weights, did provide certain descriptions, but there are questions with regard to the level of detail provided. For example, one key item was the location within a home of where these alleged controlled substances were located. There was allegedly a map drawn, but essentially in the affidavit all that was said was that the confidential informant identified the location without any further information given. What the confidential informant did provide, which was corroborated, one of the two items of corroboration, was the location of the home. And the confidential informant did drive by, or excuse me, did direct the officers to drive by the location. But that, in addition to a background check, was the only manner of corroboration in the case. And actually the government and the appellant discussed two different cases that I think are important and sort of show the distinction here. And those are Olson and Bell. The government contends that Olson shows that there is sufficient probable cause in this case. However, the appellant, we argue that it's more like Bell, and for these reasons. In Olson, the confidential informant was actually the individual's nephew. So there was a familiar relationship that actually demonstrated why the individual had first-hand knowledge. In addition, this court discussed the fact that the basis for the first-hand knowledge of location of drugs and other key details was the fact that the informant actually had been inside the home and wanted to rob the uncle of those items, which actually expanded the scope of penal interests that were at play into the drug trade beyond the armed robbery that was at hand. In Bell, on the other hand, Bell involved an individual who said that there were two baggies of drugs and identified the location of the individual's, the defendant in that case's, home, but provided no further information and the officers did not corroborate any further information. In this case, there was discussion from the confidential informant that he was involved with Mr. Hansmeier in terms of distributing methamphetamine. But there were some key instances with regard to the duration of relationship. The confidential informant claimed that there was six months, whereas Mr. Hansmeier was actually released from prison for a shorter duration than that. And the affidavit swore that he knew Mr. Hansmeier had recently been released, was on parole, and knew his parole officer. There's also the fact that, again, there were key details with regard to surveillance cameras being present, when in fact that was not accurate. Now, the government contends that there were wires there and surely surveillance cameras are the only things that those could possibly be going towards, but I'm sure house lights or other items could possibly lead to that as well. So again, in Olson, you have a lack of corroboration of any of the sort of incriminating details that the informant there provided, versus in Olson, where you have an intimate familial relationship, an expansive penal interest in terms of into the drug trade beyond mere armed robbery and the other crimes for which he had been arrested, that provided additional reliability. Again, here, the only two pieces of corroboration that the agents took in this case was driving the individual by the residence so that he could direct them to the residence, as well as a criminal background check, where at the Franks hearing later on, there was a lack of clarity about exactly what that said. It said that he did have a prior drug transaction, but exactly the full extent. Did he know, in fact, that he was recently released less than that six months that was claimed by the confidential informant? That was left unclear. And again, in Robinson, this court noted that corroboration is important. Again, it's not the sole basis for determining the credibility of a confidential informant, but it's important and it needs to go towards the illegal information provided. In other words, it needs to be material to be worn information. Again, all we have here in terms of corroboration of what the informant actually said is driving by the home. We didn't have any corroboration with regard to the relationship. For example, reviewing text messages or phone calls between the informant and Mr. Hansmeier, asking for consent for cell site location information from the informant, providing that he actually went into the home. Again, there were allegations with regard to the location in the home of where the drugs may have been located, but that information wasn't actually included with any detail in the affidavit, nor a map allegedly drawn by the confidential informant included with the affidavit. So here, while there was detail provided with regard to quantity of controlled substance involved, and there were allegations of a relationship and basis for first-hand knowledge, corroboration, which even the government admits was not this affidavit's strong suit, frankly was basically nonexistent as it relates to any of the incriminating details for Mr. Hansmeier's alleged drug activity. And therefore, in addition to the fact that the affidavit, or the affiant even indicated that the confidential informant owed Mr. Hansmeier, or claimed to owe Mr. Hansmeier $5,000 at the time of his arrest, a motive to implicate Mr. Hansmeier in criminal activity, there was essentially nothing to prove the reliability of the alleged story that the confidential informant provided here. Something more needs to be corroborated in order to prove that information, and it would have not been much to ask law enforcement to corroborate some of those incriminating or material details. And it is for those reasons that we argue that there was insufficient probable cause here. Again, the affidavit was based solely on the confidential informant in this case. There was another confidential informant mentioned by number. However, even the district court indicated that there was wholly insufficient information as it relates to the reliability of that confidential informant. And so therefore, it carried absolutely no weight correctly in the district court's mind. So the only information was based upon the confidential informant, the single one. And therefore, the probable cause relates to the reliability of that informant's information. Again, the only information that was corroborated being the location of the house, not the interior structures or layout of the home, nor alleged location of controlled substances or anything material to the distribution and trafficking of alleged controlled substances. Mr. Stevenson, do you want to speak about the possibility of the good faith exception? Yes. Yes, Your Honor. With regard to good faith, we feel that all three of Leon's exceptions to good faith apply here. I guess I won't be repetitive with regard to the insufficiency of probable cause here. So I'll move on to the cases as well as the falsehoods and omissions. With regard to the comparison to cases, whether it's Bell, McKutick, Gibb or Carruth in the Seventh Circuit, there are all material similarities and frankly almost total overlap. Now, of course, all cases are going to be slightly factually different. So we can't possibly claim that they are identical twins. However, key aspects essentially, single informants of unknown reliability with minimal if not any corroboration were all at play in those cases. Good faith saved every one of those warrants. The officers should have known and in fact were obligated to realize they needed to do more. So the reliance on a warrant similarly insufficient in corroboration cannot be in good faith. And I will save the remainder of my time for rebuttal. Thank you. Ms. Curry. Good morning, Your Honors, and may it please the Court. Crystal Curry on behalf of the United States. The affidavit that supported the search warrant in this case contained facts that support a finding of probable cause. And even if this Court does not want to reach the issue of probable cause or finds that probable cause was not established, the good faith exception does apply. Now, with regards to probable cause, this was a search warrant based off of the statements of a newly arrested informant. And when the Court looks at the reliability of that informant and the information in the affidavit, the Court's analysis is contained within the four corners of that affidavit. So to be clear, there's a distinction between the facts present in the affidavit and the information that resulted or came out during the Franks hearing. The affidavit, to support the reliability of an affidavit, the Court looks at five separate factors. And specific to the informant's information, the Court looks at firsthand observations, the detail and specificity of the information provided by the informant, and the duration of time between the information provided by the informant and the application for the search warrant. And they were against his penal interest, too. I'm sorry, Your Honor? They were against his penal interest as well. That's correct. And that raises the reliability of the informant. In this case, the informant gave detailed information. He was arrested in possession of 68 grams of methamphetamine and 18 grams of heroin. And with respect to his penal interest, the informant admitted to larger criminal conduct, specifically with the defendant in this case. He admitted that he had a several-months-long relationship with the defendant and that he was receiving four ounces, which is equivalent to 113 grams, of methamphetamine at least weekly and, more recently, twice weekly. As a result of the informant's statements, which he gave without a grant of immunity, he was actually charged with a conspiracy to distribute more than 500 grams of methamphetamine. So not only did he make statements against his penal interest, those did materialize into actual charges against the informant. Now, the cooperation the government admits is imperfect. Law enforcement received information, interviewed the informant between about 2 a.m. and drafted and submitted the search warrant for issue at approximately 8 a.m. What did the record check on Hansmeier show? The record check showed that Hansmeier had a previous conviction for distribution of controlled substance, had a conviction for unlawful use of a weapon, and did have numerous other arrests and convictions related to controlled substances. And those, again, support a finding of probable cause because there was an indication that the defendant, as identified by the informant and by the criminal history check, indicates that the defendant was involved in criminal activity specific to narcotics. Now, the cooperation in this case was the informant directing law enforcement to the defendant's home. And that occurred by law enforcement taking the informant, driving to Canton, Missouri, and then asking the informant to provide the street directions, exits to take, streets to take, to get to the defendant's home. And the informant did that. In addition to the criminal history check that was done, the affidavit contains a statement by CI-648 which indicates that the confidential informant observed the defendant provide a gallon-sized baggie of methamphetamine to another individual. The agents also included in the affidavit that they were familiar with the defendant based on previous investigations. And while law enforcement didn't expound upon that in the affidavit, these are agents working with the Northeast Missouri Drug Task Force who are charged with investigating drug crimes. Now, the government's contention is that the affidavit provided sufficient information for a finding of probable cause. However, even under good faith, there's no reason to exclude the evidence. In this case, this specific affidavit is materially similar to Olson. And to address the appellant's position with regards to Bell, this affidavit is not in any way, shape, or form similar to the affidavit in Bell. In Bell, there was no establishment of a relationship between the informant Hale and Bell, and that specific affidavit lacked any kind of detail. The informant indicated that they saw drugs and money, no quantities, no information. The informant in this case indicated he observed 30 pounds of marijuana in the house just 30 days before his arrest, that he was aware that the defendant kept heroin, marijuana, and methamphetamine in the house, that he saw a large stack of cash recently. This information by this informant was much more detailed than the informant in Bell. Yeah, but Bell didn't carry with it misstatements, did it, Ms. Curry? Which we have in this warrant, don't we? That's correct. And with regards to the misstatements, that is an issue under Frank's, which is an issue under good faith. And the analysis of that is whether or not the district court committed clear error in deciding if Frank's violations occurred. And the appellants haven't truly argued that clear error existed at the district court level. Now, the only two things that they raised on this appeal with regards to Frank's is an allegation that the timeline in terms of the informant visiting the defendant 18 times within six months was incorrect. And the second assertion is that with regards to a flushing incident at a previously executed search warrant at the defendant's house. Now, the district court, in the government's appendix page 98, the district court's opinion after a Frank's hearing indicated that with regards to the timeline, the statement was not material and the reality was what came out at the hearing was that there was continuous course of criminal conduct. Whether that conduct was three months, a few months, six months, was not relevant to whether or not... Well, they found residue of drugs in the toilet, didn't they? Yes, that's with regards to the flushing incident. And again, in that instance, the information wasn't entirely accurate. What was contained in the affidavit made it seem as though the defendant flushed the drugs after the start of the execution of the search warrant. What came out at the Frank's hearing was that that was a mistake. Captain Talbert testified that that occurred nine years prior in 2004. She didn't review the reports. And what actually came out was that the defendant was detained outside of his home prior to the execution of the search warrant. But as Your Honor indicates, there was circumstantial evidence to show that drugs were in fact flushed down the toilet. They were discovered at the end of the drainage pipe of the defendant's house in a lagoon that only that home drained to. And so the error in the affidavit was that this timeline, the sequence of events was off and not that no flushing incident occurred. The flushing incident, in fact, did occur. And the district court held that although Agent Murphy, the affiant of the search warrant, received incorrect information from the captain, he had no reason to know that that information was incorrect. And that's the issue in Frank's. Not only does the misstatement or omission have to be material, but it also has to be made with deliberate and reckless disregard for the truth, which means that the officer has to question the validity or have dubious concerns about whether or not that, in fact, is truthful. And the Supreme Court in Frank's talked about what a truthful statement means. It doesn't mean that everything in the affidavit has to be absolutely correct, because affidavits are often based on hearsay, statements of informants, as well as information in the affiant's own knowledge that, as the Supreme Court put it, sometimes is garnered hastily. And so there were some inaccuracies in the affidavit, but there was no clear error by the district court. So, Your Honors, we ask that you affirm the district court's holding and find that the affidavit did support a finding of probable cause. Thank you. Thank you, Ms. Gray. Mr. Stephens? Thank you, Your Honor. Two points on rebuttal. First, with regard to Olson, I think it's important to recognize that in Olson there was also actually a citizen complaint, an anonymous citizen complaint, that also corroborated the confidential informant in that case. Again, Bell was, similar to this case, a single confidential informant. We do agree that there was a difference in level of detail, but in Olson, the individual confidential informant indicated that there were two baggies. This court had concerns about exactly what type of quantity, a baggie, and what have you, but there was indications of drugs in the premises, as well as repeated observations of that. In addition to the fact that the affidavits reviewed intel reports from SLANT, a law enforcement organization, to also further corroborate the material details. Again, Bell, there was not that corroboration of material incriminating details. And last but not least, with regard to what counsel ended on, that being the Franks issues, there's a definite danger in allowing for one officer to, quote, not review reports and be effectively reckless with their information, but then pass that on to a second officer and let that immunize the information. And with regard to the course of dealing of the six months, three months, it goes to the reliability of the confidential informant, which is the critical and almost sole consideration of the probable cause in this case. Thank you. All right. Thanks to all counsel. Professor Stevenson, thank you again for accepting the appointment in this case and appreciate the efforts of the program. All right. Case is taken.